## No. 9013.

HAGGIN, ET AL., *v.* THE INTERNATIONAL TRUST CO., ET AL.

Decided December 3, 1917.

Action involving objections and protest to the admission, of a will to probate, as to a bequest to the city of Denver. Objections and protest overruled.

### *Affirmed.*

1. WILLS—*Construction.* The rule paramount in the construction of wills is to have due regard to the directions of the will, and the true intent of the testator derived primarily from the language of the will itself, and if this is not contrary to positive rule of law, or is not opposed to sound public policy, then the will must be given the effect its language imposes.

2. *Charitable bequest.* A will provided that proceeds of certain property should be devoted to the construction of an ornamental gate or arch in the civic center of the city of Denver, with a simple inscription thereon, as a memorial to the testator and his wife. *Held*, that the bequest was for a charitable purpose within the meaning of the law.

3.   *Validity of Bequest.*  A charitable bequest is not rendered invalid because trustees are not named, nor because a trustee incapable of taking it, is named.

4. PERPETUITIES—*Charitable Bequest.*  The law · against perpetuities has no application to public charitable gifts.

5. TRUSTS—*Municipal Corporations—Powers.*  The City and County of Denver is by express provision of the constitution authorized to accept gifts of the character under consideration, and is capable of taking the property and executing the trust in accordance with the provisions of the will.

6. COURTS—*Jurisdiction.*  Courts have original inherent jurisdiction over charitable gifts and trusts.

*Error to the County Court of the City and County of Denver, Hon. Ira C. Rothgerber, Judge.*

Mr. WILLIAM V. HODGES, Mr. D. EDGAR WILSON, Mr. RICHARD B. SCANDRETT, JR., Messrs. LEWIS & GRANT, for plaintiffs in error.

Messrs. HUGHES & DORSEY, Mr. E. I. THAYER, Mr. JAMES A. MARSH, Mr. THOMAS H. GIBSON, for defendants in error.

*En banc.*

MR. JUSTICE SCOTT delivered the opinion of the court.

THIS action is to review the judgment of the County Court of the City and County of Denver, admitting to probate the last will and testament of J. H. P. Voorhies, over the objections and protests of plaintiffs in error, as to one specific bequest.  The protest goes to provisions of the will, with supplemental codicils as follows:

"Eleventh.  All the rest and residue of my estate, real, personal and mixed, when sold and converted into cash by my executor, shall be devoted and applied to the construction of an ornamental gate or arch of stone at some entrance to or at some suitable part of the Civic Center in the City and County of Denver, to be built in the City

and County of Denver, State of Colorado, with some suitable and simple inscription thereon, as a memorial to my beloved wife and myself: Provided, however, that my executor shall select some suitable persons among my surviving friends to act in conjunction with the officials of the City and County of Denver, in the selection of the design for said gate or arch, the material to be employed therein and the construction thereof, to the end that the real intent and purpose of this particular direction in my will shall be carried out in good faith, according to its true intent and purpose, and that said persons shall, in all respects, possess equal power and authority in the premises with the officials of said City and County of Denver, and all moneys covered by this particular bequest shall be paid out by my executor, subject to the approval of the said persons so selected.

Twelfth.   *   *   *   And I do hereby devise and bequeath to my said executor, for the purposes aforesaid, the title to all of my property of which I may die seized, or be in any manner entitled to at the time of my death, save and except said specific bequests contained in said paragraphs numbered 'Second,' 'Third,' 'Fourth,' and 'Fifth.'

I do further will and direct that my said executor shall, with all reasonable dispatch, sell and convert into cash, all of the property hereinbefore devised and bequeathed to it, directing and declaring that none of such property shall be sold at a sacrifice."

The contentions of plaintiffs in error are: (a). that the trust thus created is not a charitable trust, (b) that it violates the rule against perpetuities and (c) that there is no beneficiary with power to enforce the trust.

In the very elaborate opinion of Mr. Justice Steele, in the case of Clayton v. Hallett, 30 Colo. 231, 70 Pac. 429, 59 L. R. A. 407, 97 Am. St. Rep. 117, it was said that "The decisions in the United States concerning charitable trusts cannot be reconciled." A study of the voluminous briefs in this case lends strength to that conclusion. In that case

there was announced certain conclusions of law applicable and controlling in this action. Among these are to be noted:

The principles of the common law as it existed prior to the fourth year of James I., so far as applicable are in force in Colorado and charitable uses are to be enforced in accordance with the principles of the common law.

The statute of 43 Elizabeth, chapter 4, so far as it recognizes or indicates what are charitable uses and gives validity to gifts for such uses is in force as a part of the common law, but the details of the statute and remedies therein provided, are inapplicable and are not in force. But independently of that statute the courts have original, inherent jurisdiction over charitable gifts and trusts.

A bequest or devise to charity is not affected by the law applicable to perpetuities, or the accumulation of income, but is to be given the most liberal construction to the end that the wishes of the donor may be enforced.

A devise to charity is not rendered invalid because trustees are not named, nor because a trustee is incapable of taking it, is named.

Municipal corporations may take and hold property in trust for charitable uses within the scope of their powers or duties, and if such trust is repugnant to or inconsistent with the proper purposes for which the corporation was created, the corporation may not be compelled to execute it, but it will furnish no ground to declare the trust itself void.

The rule paramount in the construction of wills as settled in this jurisdiction, is to have due regard to the directions of the will, and the true intent and meaning of the testator, derived primarily from the language of the will itself, and if this is not contrary to positive rule of law, or is not opposed to sound public policy, then the will must be given the effect its language imposes. *Tuckerman v. Currier*, 54 Colo. 25, 129 Pac. 210, Ann. Cas. 1914C, 599.

Excepting only certain specific bequests named in preceding paragraphs of the will, the language of the bequest is:

"I do hereby devise and bequeath to my said executor for the purposes aforesaid the title to all my property of which I may die seized, or be in any manner entitled at the time of my death." With specific direction, "That my said executor shall with all reasonable dispatch sell and convert into cash all of the property hereinbefore devised and bequeathed to it."

The purpose and use of the property, when so converted, was declared in unmistakable language to be:

"Shall be devoted and applied to the construction of an ornamental gate or arch of stone at some entrance to or at some suitable part of the Civic Center in the City and County of Denver, to be built in the City and County of Denver, State of Colorado, with some suitable and simple inscription thereon, as a memorial to my beloved wife and myself."

The Civic Center is the common and official designation of a portion of the city's public grounds, partaking of the nature and character of a public park, designed for public comfort and convenience, and among other things to promote civic beauty and civic pride, with present and proposed ornamentation by means of monuments, fountains and otherwise. It is held and controlled by the city as are other public improvements.

Is then the trust declared by the will, a charitable or a private trust.

It was for "the construction of an ornamental gate, or arch of stone at some entrance to or at some suitable part of the civic center. With some suitable and simple inscription thereon, as a memorial to my beloved wife and myself."

It is contended by counsel that the prime purpose of the testator was to construct a monument to himself, and that a trust with a direction to erect a memorial to a private individual is not charitable. In the abstract sense, if this be a true premise, the legal conclusion is sustained by respectable authority. But the language used does not

justify the assumed premise. It is true that it is provided that the gate or arch shall bear "some suitable and simple inscription thereon as a memorial to my beloved wife and myself." A suitable and simple inscription is the expression of a desire too modest in itself to include any thought of an exploitation of the acts or deeds of the testator. It cannot be construed to mean more than a suitable statement calling to mind in a simple way the name of the donor of the ornament. It was to be an "ornament," permanent in character, of stone, in the form of a gate or arch, preferably to mark an entrance to the grounds of a city's beauty and comfort spot. It was therefore to be a suitable and appropriate ornamental part of the Civic Center itself. Indeed, it would be an ungracious act upon the part of the city, if it did not place a suitable and simple inscription upon such an ornament in memory of the donor, whether suggested in the will or not.

Counsel for plaintiffs in error strongly rely on *Morristown Trust Co. v. Morristown*, 82 N. J. Eq. 521, 91 Atl. 736. In that case the legacy appropriated $5,000 for the erection of a bronze and granite base for the flag staff in the Morristown park, when the consent shall be obtained from the trustees of the park, and the municipal authorities of the city, the base to bear an inscription that it was erected in memory of testator's father. In that case the trustees of the city refused the consent of the city, and this action was held to operate as a rejection of the legacy. But the language of the decision as relates to the question of whether it was a charitable trust, sustains the contention of plaintiffs in error. This contention is narrow, and as we view it, not in harmony with the liberal view adopted by this court in *Clayton v. Hallett, supra,* and seemingly by the weight of authority.

Mr. Perry in his work defines charitable trusts as follows:

"Trusts for charitable uses form a large and important class of trusts. The questions that arise under this head are numerous, and often complicated and difficult of solu-

tion.    Charitable trusts include all gifts in trusts for religious and educational purposes in their ever-varying diversity; all gifts for the relief and comfort of the poor, the sick, and afflicted; and all the gifts for the public convenience, benefit, utility, or ornament, in whatever manner the donors desire to have them applied." Perry on Trusts, § 687.

This definition seems to be well sustained by authority.

In the matter of the establishment of a charity as a memorial the rule is said to be:

"As heretofore stated, in determining whether a gift is a charitable one, the courts will look to the nature and object of the gift rather than the motive of the donor making it.    Therefore the mere fact that a charity is also intended as a private memorial does not affect its public character or its validity.    If an act, to be a charity, must indeed be free from any taint of selfishness, very much that passes under the name is spurious.    But though the founding of a public charity to perpetuate one's name may not come up to the abstract idea of a Christian charity, it is uniformly treated as a charity by courts of justice." 5 Ruling Case Law, p. 325.

In *Estate of Smith*, 191 Pa. St., 109, 37 Atl. 114, the testator bequeathed the sum of $500,000 for the construction of a memorial monument in a city park.    This was held to be a charitable trust and that it did not violate the law against perpetuities, notwithstanding the testator had directed that a bronze statue of himself, with his name underneath, in large letters, shall be placed on the memorial. The court said, "The whole current of authorities, remote as well as recent, approve and sustain such disposition of his estate as is directed by Mr. Smith, and settles the same beyond all dispute, a charitable trust.

*In re Estate of Graves*, 242 Ill. 23, 89 N. E. 672, 24 L. R. A. (N. S.) 283, 134 Am. St. Rep. 302, 17 Ann. Cas. 137, involved a bequest for the erection of a drinking fountain for horses in connection with and in addition to a monu-

ment, "which shall consist of a life size bronze statue of a horse, named 'Ike Cook,' the first horse to trot a mile in 2:30, over a mile track in the state of Illinois, etc.," with direction "to carve on said monument and fountain, in a conspicuous place, my name as the person erecting said monument and fountain, the name of the horse, his record, etc." This gift was sustained as a charitable trust, and it was said by the court:

"It has always been the policy of the law to uphold charitable bequests and give effect to them whenever possible, and because our statute now exempts these bequests from the payment of the inheritance tax is no reason for departing from or modifying this ancient rule of construction favoring these charitable gifts. It will be seen from the definition above quoted that the meaning applied to the word 'charity' is comprehensive and not restricted, and includes the erecting and maintaining of public buildings or works or otherwise lessening the burdens of government. This bequest could be upheld for these reasons alone."

In *Bartlett Petitioner*, 163 Mass. 509, 40 N. E. 899, one of the bequests was the income from the sum of sixty thousand dollars in trust to be used in developing and beautifying the present Ravenswood Park grounds by clearing away the deadwood and other incumbrances, and for the purchase of other contiguous woodlands, that may be essential in perfecting its present form and completion. This was held to be a good public charitable gift.

These authorities with many others cited, and of like import, make it clear that the bequest in this case was for a charitable purpose within the meaning of the law.

Having determined that the bequest was a charitable one, it can serve no useful purpose to discuss the question argued that the bequest is in violation of the law against perpetuities, in view of the careful consideration and determination of that question in *Clayton v. Hallett, supra,* contrary to the contention of plaintiffs in error, and it

must be regarded as the settled law in this jurisdiction that this rule is not applicable to public charitable gifts.

In answer to the contention of plaintiffs in error, that there is no beneficiary under the will with power to enforce the trust, it may be said that Sec. 1, Art. 20, of the constitution of the state provides that the municipal corporation of the City and County of Denver:

"May receive bequests, gifts and donations of all kinds of property in fee simple or in trust for public, charitable or other purposes; and do all things and acts necessary to carry out the purposes of such gifts, bequests and donations, with power to manage, sell, lease or otherwise dispose of the same in accordance with the terms of the gift, bequest or trusts."

Further, it is provided by Sec. 102 of the Charter of the City and County of Denver:

"Real or personal property may be granted, bequeathed, devised or conveyed to the City and County for the purpose of improvement and ornamentation of any park, boulevard, pleasure-way or parkway, or for the establishment or maintenance therein of museums, zoological or other gardens, collections of natural history, observatories, libraries, monuments or works of art, upon such trusts or conditions as may be approved by the Commission (park) and Council; and all such property, or the rents, issues and profits thereof shall be subject to the exclusive management and control of the Commission."

It appears as a fact that the City and County of Denver has duly accepted the trust in question. The City and County of Denver is by the express provision of the constitution authorized to accept gifts of the character under consideration, and therefore to accept the legal title thereto, and may take the equitable title as cestui que trust, and is such in this case, at least by necessary implication under the terms of the will. This principle was stated in *Clayton v. Hallett,* as follows:

"It may be stated as a general proposition of law that a corporation capable of holding real estate is capable also

of executing a charitable trust, unless the statute or the articles of incorporation prohibit it. And unless specially restrained, municipal corporations may take and hold property in their own right by direct gift, conveyance or devise, in trust, for purposes germane to the objects of the corporation, or which will promote, aid, or assist in carrying out or perfecting those objects. So, in this case, unless the objects of the incorporation of the city of Denver are foreign to the purpose expressed in this trust, the city of Denver is capable of taking the property and executing the trust in accordance with the provisions of the will."

Counsel complain of the proviso, in the 11th paragraph of the will directing the selection of some suitable surviving friends, to act with the city officials in the selection of the design for the gate or arch, the material to be employed and the construction, and which also provides that all moneys covered by the particular bequest shall be paid out by the executor, subject to the approval of such committee of friends. It is urged that the trust is thus invalidated, because it is so far dependent upon the discretionary acts of persons named or unnamed that the court cannot itself take the place of the committee of friends, in this respect and compel the city to consent to the construction upon the Civic Center of the design so selected. These selected friends act jointly with the city in the selection of the design and material to be used in the construction. They must approve the payment of moneys therefor. The purpose of this was declared to be, "to the end that the real intent and purpose of this particular direction in my will shall be carried out in good faith according to its true intent and purpose." These friends were to take nothing under the will. The provision relates in no way to the vesting or substance of the bequest. They were to be selected presumably to exercise that friendly interest in the testator and his desire in the premises, as might reasonably be expected to aid in carrying out his desire in its good faith, intent and purpose. The provision clearly relates to matters of detail in the administration of the trust, and

can have nothing to do with the substance or the manner of vesting the bequest. These friends are under this'provision, merely trustees with powers limited to the definitely prescribed duties in the matter of administration; to approve the design, material to be used, manner of construction, and the proper expenditure of the funds to be used therefor. There is here no power given to change or alter the purpose, nor to limit the amount so to be expended.

In *Craig Administrator v. Sechrist,* 54 Ind. 419, the will provided: "It is my will that the said school fund be placed in the hands of two judicious colored persons of Owen County, to have control and to manage the same for the benefit of the colored children of Owen County." This was sustained as against the objection of uncertainty.

In the well considered case of *John v. Smith,* 102 Fed. 218, 42 C. C. A. 275, substantially the same objection was made as here. The testator bequeathed his estate for the purpose of establishing and maintaining free public schools in a particular town, and provided that after fifteen years, the trust should be managed by three trustees, one to be selected by the judge of the state Circuit Court; one by the judge of the United States District Court; and the third to be selected by these two judges jointly. The will was sustained. It was said:

"But if, indeed, they should decline to accept the trust, and refuse to appoint the trustees, the purpose of the testator in making the charitable disposition of his property would not be thereby frustrated. There can be no doubt that in such an event a court of equity would raise up a trustee or trustees to effectuate the intention of the testator by exercising its ordinary jurisdiction to see that the trust should not fail for want of a trustee. Pom. Eq. Jur., § 1026."

It is common in cases of charitable bequests for the testator to provide that the trustees named are to select their successors; and also to direct that a corporation shall be organized for the purpose of administering the trust.

It is generally held that courts look upon charitable bequests with great favor and will not speculate as to possible happenings, in order to defeat them.

The judgment is affirmed.