## No. 16,307.

COLE, EXECUTOR *v.* CHRISTOPHER, ADMINISTRATRIX.

(217 P. [2d] 620)

Decided March 20, 1950. Rehearing denied April 17, 1950.

Messrs. Rinn & Connell, Messrs. Miller, McKinley & Walsh, Mr. R. F. Proffitt, for plaintiff in error.

Messrs. Lee, Bryans, Kelly & Stansfield, for defendant in error.

*In Department.*

Mr. Justice Jackson delivered the opinion of the court.

This case, involving the construction of a will, was before us on another phase in *Christopher v. Cole*, 118 Colo. 471, 196 P. (2d) 988. Its history and salient facts are set forth in the district court's findings and judgment entered after the second trial. These were:

"That A. S. Miller, late of the County of Adams and State of Colorado, departed this life on or about the 29th day of September, A. D. 1945; that thereafter the defendant herein was duly appointed executor of the last will and testament of said decedent, and said will was regularly admitted to probate in the County Court in and for the County of Adams and State of Colorado on the 30th day of April, 1946; that on to-wit the 15th day of November, 1945, Margie Lloyd filed her petition in said Court to construe the last will and testament of said deceased and to restrain the sale of certain personal property; that an answer was filed to said petition for the construction of the will on the 7th day of June, 1946; that on November 15, 1945, the County Court denied the petition of plaintiff to construe said will and restrain the sale by the defendant executor 'without prejudice to the said Margie Lloyd asserting any right, title, interest, claim or demand which she may have in and to the personal property described and referred to in her

said petition, either as owner thereof in her own right or as beneficiary under the terms and provisions of the last will and testament of said deceased.' The County Court further ordered that the defendant, then special administrator of said estate, proceed with the sale of said personal property and deposit the proceeds thereof in a separate account to be held and retained by him subject to the further order of the Court and the ultimate determination respecting the title and ownership of said personal property; thereafter, and on the 21st day of August, 1946, the County Court, after a hearing, denied the petition and ordered, adjudged and decreed that the plaintiff Margie Lloyd was not entitled to any of the livestock of decedent under the provisions of Item Second of his last will and testament.

"An appeal was taken from this decision of the County Court to this Court, and thereafter and on to-wit the 3rd day of March, 1947, this Court entered a summary judgment in favor of the defendant herein and against the plaintiff, from which judgment the plaintiff appealed to the Supreme Court of Colorado, which Court on to-wit the 26th day of July, 1948, reversed said judgment with instructions to this Court to hear and receive evidence in the case to determine the true intention of the testator. 196 P. (2d) 988, 118 Colo. 471.

"Thereafter Margie Lloyd, the original plaintiff in these proceedings, departed this life, and Della Christopher, plaintiff herein, was duly appointed administratrix of her estate, and she now prosecutes this proceeding for and on behalf of the estate of the said Margie Lloyd, deceased.

"The will under consideration was executed by testator on September 22, 1945, and testator died September 27, 1945.

"The plaintiff herein prays for the construction of the will as to the legacy in Item Second of the Will, which is as follows, to-wit:

" 'Second. I give, devise, and bequeath to Margie Lloyd to pay her for making a home for me for a number of years next before the making of this will the following described real estate, to-wit: The Northeast Quarter and the South Half of Section Thirty-four (34) and the Southwest Quarter of Section Thirty-five (35) in Township Three (3) South, of Range Sixty-five (65) West of the Sixth Principal Meridian, in Adams County, Colorado, subject to railroad rights of way, and all my livestock now on said lands.'

"The Court further finds that the real estate described in said Item Second devised to Margie Lloyd is commonly known as the 'Home Place;' that testator died seized of other parcels of real estate, including the parcel of real estate described in Item Ninth of the Will, commonly known as the 'Adobe Place.'

"Plaintiff's Exhibit B introduced in evidence is a report of the personal property sold at the public sale conducted by the Executor, including all livestock of decedent, and it was stipulated by and between counsel for plaintiff and defendant upon the trial hereof that the aggregate value of the livestock involved herein realized at said sale is the sum of $6,518.50. The Court further finds that at the time of execution of the will and at the time of the death of deceased, the following livestock, to wit 1 black and white pony of the value of $92.50; 1 Jersey cow of the value of $45; and a mare and colt of the value of $180, all of the aggregate value of $317.50, were located and situated on the 'Home Place;' that upon the date of the execution of the will by decedent and upon the date of his death all of the remaining livestock owned by deceased were located on what is known as the 'Adobe Ranch.' The Court finds, however, that prior to the making of the will, the deceased directed that the cattle on the 'Adobe Place' be moved to the 'Home Place,' and that when deceased made his will, he was under the impression all livestock

were on the 'Home Place.' The Court further finds from all of the evidence in the case that it was the intention of the deceased to bequeath all of his livestock to Margie Lloyd, irrespective of wheresoever situated, and that the words appended to the last sentence of Item Second of the will 'now on said lands' should be considered as surplusage. The Court finds all issues herein, both of fact and of law, in favor of the plaintiff and against the defendant.

"Now, therefore, it is hereby ordered, adjudged and decreed by the Court that plaintiff have judgment herein against the defendant in the sum of $6,518.50, together with plaintiff's costs in this behalf expended, and that execution may issue therefor."

The executor, Cole, comes here urging error, and files nine specifications of points which are argued under three propositions: that the court erred: (1) In admitting the testimony of disqualified witnesses; (2) in giving the plaintiff deceased's livestock not on the land willed to Margie Lloyd; and (3) in finding that deceased intended to give Margie Lloyd all his livestock wherever situate, and that the words, "now on said lands," were surplusage.

(1) The principal testimony to which exception is taken is that of John Lloyd, a son of deceased Margie Lloyd, a beneficiary of the Miller estate. He testified (over objection) to a conversation had with A. S. Miller in the hospital, prior to the execution of the latter's will, in the presence of his mother, Margie Lloyd, and his two sisters, Della Christopher and Trula Di Andrea. The gist of the conversation was that Miller instructed John Lloyd to move the cattle up to the "Home Place." Lloyd testified that he did not follow instructions immediately, because "I met some of my friends and got a little tipsy, I guess, and didn't go out." He also said "I waited three or four or five days." Della Christopher also testified to this conversation between Miller and

her brother, John Lloyd, saying that Miller remarked that he was afraid of the black marketeers if the cattle were left on the "Adobe Place," and she added that the cattle were not moved until after Miller's death. Trula Di Andrea also testified to this conversation.

The two above-named daughters of Margie Lloyd also testified to another conversation alleged to have taken place in the hospital between Miller and their mother, Margie Lloyd, in the presence of themselves and Cole, the executor. The purport of this alleged conversation was that Miller asked Margie Lloyd what she would like to have, and she replied the "Home Place," the "Adobe Place," and the livestock, and that Miller then said he would give her the "Home Place" and the livestock.

All of the foregoing testimony was admitted over objection of counsel, who argued it was inadmissible under section 2, chapter 177, '35 C.S.A., the first paragraph of which reads: "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, * * * when any adverse party sues or defends as * * * the executor or administrator, heir, legatee or devisee of any deceased person * * *."

Counsel for defendant in error contend this testimony was admissible under two exceptions to the rule above quoted, i. e., subsections Third and Sixth of said section 2 which read as follows:

"Third. When in any such action, suit or proceeding, any such party suing or defending as aforesaid, or any person having a direct interest in the event of such action, suit or proceeding, shall testify in behalf of such party so suing or defending, to any conversation or transaction with the opposite party or parties in interest, then such opposite party in interest shall also be per-

mitted to testify as to the same conversation or transaction."

"Sixth. In any such action, suit or proceeding, any adverse party or parties in interest may testify as to any conversation or admission, or as to all matters and things connected with the subject matter of said action, suit or proceeding, and which conversation and admission and matters and things aforesaid, occurred before the death and in the presence of such deceased and also in the presence of any member of the family of such deceased person over the age of sixteen years, or in the presence of any heir, legatee or devisee of such deceased person over the age of sixteen years; provided, however, that such member of the family, heir, legatee or devisee as the case may be, is present at the hearing of said action, suit or proceeding, or whose testimony is or may be procurable at such trial."

We do not believe the facts in this case come within the scope of either subsection.

As to the testimony of the two daughters of Margie Lloyd relating to an alleged conversation between Miller and Margie Lloyd in their presence and in the presence of Cole, the executor, it is clear that this does not come within either provision. Cole denied ever having been present in the hospital at such a gathering and hearing any such conversation; but even had he been present, he is not a person having an adverse interest to the claim of Margie Lloyd, being neither "an heir, legatee or devisee of such deceased person over the age of sixteen years," nor "a member of the family of such deceased person over the age of sixteen years," as stated under subsection Sixth, supra.

Greater emphasis is laid, however, on the argument that Cole's affidavit in support of his motion for summary judgment in the first trial amounted to testimony regarding "the conversation or transaction" and therefore justified the admission of the alleged conversation

between Miller and John Lloyd concerning the moving of the cattle to the "Home Place." The affidavit reads as follows:

"Comes now A. G. Cole, who being first duly sworn upon his oath, deposes and says,

"That he is the Executor of the Estate of A. S. Miller, deceased, that he was personally present in the County Court in Adams County, at the time of the hearing with reference to the petition of Margie Lloyd to construe the Will of A. S. Miller, that at said hearing the Stipulation hereto annexed as Exhibit "A" was entered into between the parties and all of the evidence as well as the Stipulation of the parties, established without dispute that at the time of the death of A. S. Miller none of his livestock was located on the property given to Margie Lloyd by the Will, but that all of said livestock was located on the Adobe place which passed under the residuary clause of the Will so that there was not and is not any issue of fact between the parties and the only question before the Court is the interpretation of the plain language of the will which as a matter of law should be resolved against the contentions of Margie Lloyd, that, Exhibit "B" hereto attached is a copy of the Findings, Judgment and Decree of the Judge of the County Court which properly resolved the issues of law against the contentions of Margie Lloyd."

The affidavit was offered in evidence in the second trial, not by plaintiff in error, but by defendant in error, and was admitted by the trial court. We do not believe it affords a proper basis for the admission of evidence concerning the John Lloyd "conversation or transaction." In the first place it is not testimony in the same sense as is that given in open court or by deposition, and the affiant was not subject to cross-examination. In the next place the subject matter of the affidavit does not pertain to any conversation or transaction taking place prior to the death of the testator, Miller, but is a recital

of what happened in the trial in the county court subsequent to Miller's death. There is no reference in the affidavit to any situation or circumstance existing prior to Miller's death. It can not, therefore, properly be used as a wedge to open the door to evidence not within the provisions of the statute. The objection to the testimony of the three children of Margie Lloyd should have been sustained since, as heirs of Margie Lloyd, they were beneficiaries under the Miller will. *Eder v. Methodist Ass'n,* 94 Colo. 173, 29 P. (2d) 631. See, also, *Cree v. Becker,* 49 Colo. 268, 112 Pac. 783; *Butler, Admr. v. Phillips,* 38 Colo. 378, 88 Pac. 480.

In *Koch v. Garnier,* 110 Colo. 562, 136 P. (2d) 673, to which counsel for defendant in error refer in their brief, we approved the admission of testimony of beneficiaries under a will because, in that case, the admission of such testimony had been waived. Citing *Lamborn v. Kirkpatrick,* 97 Colo. 421, 50 P. (2d) 542, and cases from other jurisdictions.

█ It is contended that even if the testimony of the three children of Margie Lloyd is excluded, there still is the evidence of the other witnesses, George McDonald, Tony Kreitzer, Joseph Kreitzer, Albert Kreitzer and Richard Maher, and that the trial court could properly have reached the same result relying alone upon their testimony to support the judgment. We do not agree with this argument for two reasons: First, the testimony of these witnesses does not bear on the point on which the trial court based its judgment; and second, the trial court, in its "Memorandum for Findings," made this statement: "At the trial of this cause objection was made to the introduction of certain testimony which, according to Mr. Bryans' theory was admissible under the 3rd and 6th sub-sections of Section 2, Chapter 177, Volume 4, 1935 C.S.A. The Court believes such testimony properly admissible and has considered the same in arriving at its findings."

■ (2) Because of the improper admission of the testimony of the Lloyd children, we are of the opinion that the court erred also in awarding plaintiff deceased's livestock which was not on the land that was willed to Margie Lloyd; (3) And also erred in finding that Miller intended to give Margie Lloyd all his livestock wherever situate, and that the words "now on said lands" were surplusage.

The judgment is accordingly modified, with instructions to enter judgment in favor of the administratrix of the estate of Margie Lloyd, deceased, in the amount of $317.50, being the value of the livestock which the trial court found was located on the "Home Place" at the time testator made his will and also at the time of his death.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE MOORE concur.